UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )   S1-4:20-cr-00831 SEP |
| v. | )   No. Click here to enter text. |
| | ) |
| CARLOS TRAVIS | ) |
| | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Carlos Travis, represented by defense counsel Kenneth R. Schwartz, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 and 2 in the superseding information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the superseding information. Furthermore, the parties agree that the U.S.

1

Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.

### 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 111(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. On or about December 17, 2020, the defendant forcibly assaulted Matt Sutton and Ryan Williams, Special Agents with the Federal Bureau of Investigations, with a deadly weapon;

2. The assault was done voluntarily and intentionally; and

3. At the time of the assault, Special Agents Sutton and Williams were doing what they were employed by the federal government to do.

As to Count 2, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. On or about December 17, 2020, the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year;

2. On or about December 17, 2020, in St. Louis County, within the Eastern District of Missouri, the Defendant knowingly possessed a firearm;

3. The firearm was transported across a state line at some point during or before the Defendant's possession of it; and

4.  At the time Defendant possessed the firearm, Defendant knew he had been convicted of a felony; that is, a crime punishable by imprisonment for a term exceeding one year.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Investigators with the Federal Bureau of Investigation began an investigation into Carlos Travis' narcotics trafficking in June of 2019. During the investigation into Carlos Travis, investigators conducted controlled purchases of narcotics from Carlos Travis. Subsequently, investigators received a federal search warrant, which authorized investigators to search Carlos Travis' residence. That residence is located at 3 Trinity Lane, Florissant, Missouri 63031 (within the Eastern District of Missouri).

In the early morning hours of December 17, 2020, members of the FBI's Special Weapons and Tactics (SWAT) Unit, including Special Agents Matt Sutton and Ryan Williams, executed the search warrant at Travis' residence (within the Eastern District of Missouri). In attempting to execute the search warrant, the members of the SWAT Unit were doing what they were employed to by the federal government to do. Before executing the search warrant, SWAT officers, who were the only individuals outside of Travis' residence, announced their presence prior to entering Travis' residence. After announcing their presence, SWAT officers witnessed multiple shots that were fired from inside Travis' residence, which exited the residence in their direction. Carlos Travis voluntarily and intentionally fired those gunshots in the direction of the individuals who

were outside his residence with a Ruger AR-55s assault rifle (serial number 857-65094). Those gunshots put the members of the SWAT Unit in fear of imminent bodily harm. After SWAT officers witnessed the gun shots and took cover, they called out for Travis to exit the residence with his hands up. Travis and his wife subsequently exited the residence and surrendered to the SWAT officers.

That same morning, investigators subsequently conducted a search of Travis' residence. During that search, investigators located and seized as evidence a Ruger AR-556 (AR-15) assault rifle (serial number 857-65094) complete with a loaded magazine under the mattress in the master bedroom. Investigators also located and seized as evidence a live 5.56 round at the top of the stairs inside the residence. In addition, investigators located and seized as evidence spent 5.56 shell casings inside the residence. The seized Ruger AR-556 (AR-15) assault rifle (serial number 857-65094) is a firearm under federal law, and that the firearm was not manufactured in the State of Missouri.

Furthermore, at the time of Carlos Travis' knowing possession of the aforementioned assault rifle, Carlos Travis was a convicted felon (i.e., he was previously convicted of crimes punishable by imprisonment for terms exceeding one year). Indeed, Travis had received multiple prior felony convictions in the State of Missouri. In addition, during a post-*Miranda* interview with Travis, he admitted that—at the time of his knowing possession of the aforementioned assault rifle—he knew that he was a convicted felon (i.e., that he had been previously convicted of crimes punishable by imprisonment for terms exceeding one year). In that same post-*Miranda* interview, Travis admitted that, prior to his firearm possession on the morning of December 17, 2020, he regularly slept with the aforementioned assault rifle.

**5. STATUTORY PENALTIES:**

  A. **Count 1:** The Defendant fully understands that the maximum possible penalties provided by law for the crime to which the defendant is pleading guilty under Count 1 is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than three years.

  B. **Count 2:** The Defendant fully understands that the maximum possible penalty provided by law for Count 2 is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A. **Count 1:**

  **a. Chapter 2 Offense Conduct:**

  **(1) Base Offense Level:** The parties agree that the base offense level for Count 1 is found in Section 2A2.2, and that the Base Offense Level under that provision is 14.

  **(2) Specific Offense Characteristic:** The parties agree that the following Specific Offense Characteristics apply for Count 1: that a firearm was discharged, which results in an

increase of 5 levels under Section 2A2.2(b)(2), and that the defendant is being convicted under 18 U.S.C. § 111(b), which results in an increase of 2 levels under Section 2A2.2(b)(7).

**B.    Count 2:**

    **a. Chapter 2 Offense Conduct:**

    **(1) Base Offense Level:** The parties agree that the base offense level for Count 2 is found in Section 2K2.1 and depends on the nature of the firearm, the defendant's criminal history, and other factors listed therein.

    **(2) Specific Offense Characteristic:** The parties agree that the following Specific Offense Characteristics apply for Count 2; that four levels should be added under Section 2K2.1(b)(6)(B).

    **b. Chapter 3 Adjustments:**

    **(1) Official Victim:** The parties agree that Section 3A1.2(c)(1) applies, which results in an increase in 6 levels because the defendant, in a manner creating a substantial risk of serious bodily injury, and having reasonable cause to believe that a person was a law enforcement officer, committed the crime charged in Count 2.

    **(2) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said

6

evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(3) Determining Offense Level on Multiple Counts:** The parties agree that determining the offense level on Counts 1 and 2, under Sections 3D1.1, 3D1.2, 3D1.3, and 3D1.4, depends on the defendant's Base Offense Level for Count 2, as determined under Section 2K2.1.

C. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is as found in Sections 2K2.1 and 2A2.2, as adjusted above, unless the defendant is an Armed Career Criminal or a Career Offender. Depending on the underlying offense and the defendant's criminal history, the defendant could be an Armed Career Criminal under Title 18, United States Code, Section 924(e) and Section 4B1.4 or a Career Offender under Section 4B1.1. If the Court finds that the defendant is an Armed Career Criminal or a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not an Armed Career Criminal or a Career Offender.

**D. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**E. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline

despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s). Defendant further waives his right to appeal his conviction on the basis that the information did not adequately allege the elements, including any requisite mens rea as to the Defendant's prohibited status, of the offense(s) for which the defendant is pleading guilty.

**(2) Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the defendant within or above the determined Sentencing Guidelines range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28,

8

United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

    **g. Forfeiture:** The Defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

    a. A Ruger AR-556 (AR-15) assault rifle (serial number 857-65094), loaded with a magazine, seized on or about December 17, 2020.

The Defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the Defendant when it is issued and will be part of the sentence. The Defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The Defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The Defendant

10

knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that Defendant was not given adequate notice of forfeiture in the charging instrument. The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in

fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 5/19/21 | |
| Date | Derek J. Wiseman |
| | Assistant United States Attorney |
| | |
| Date | Carlos Travis |
| | Defendant |

13

May 4, 2021

_____
Date

_____
Kenneth R. Schwartz
Attorney for Defendant

14